UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE  DIVISION

HAROLD CROUCH,              )
       Plaintiff,           )
                               )
   vs.                     )         3:04-cv-010 RLY-WGH
                               )
WHIRLPOOL CORPORATION,   )
       Defendant.       )

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action was brought by Plaintiff Harold Crouch against Defendant Whirlpool

Corporation.  Crouch alleges that Whirlpool unlawfully violated his rights under the

Family and Medical Leave Act ("FMLA").[1]  The matter is now before the court on

Defendant Whirlpool's Motion for Summary Judgment.  Because Crouch has failed to

raise a genuine issue of material fact, Summary Judgment is granted in Whirlpool's favor.

**I.**     **Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[1] Crouch's original complaint included additional charges.  All of his claims against the
International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, Local
808 have been dismissed.  *See* February 18 Stipulated Motion for Partial Dismissal with
Prejudice.  His claim against Whirlpool based on the Labor-Management Relations Act
("LMRA") has also been dismissed.  *See* February 22 Stipulated Motion for Partial Dismissal
with Prejudice.  In the briefing on the present motion, Crouch concedes that there is insufficient
evidence to support his ERISA claim against Whirlpool.  Plaintiff's Brief in Opposition to
Defendant's Motion for Summary Judgment at 2 n.1.  At this point, Crouch's FMLA claims
against Whirlpool are the only remaining claims in the case.

is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine "only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996). The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *National Soffit & Escutcheons, Inc.*, 98 F.3d at 265.

## II.    Factual Background

The following facts, when disputed, are taken in the light most favorable to Crouch. References to the parties' briefs are also references to the evidence cited therein.

Crouch began working as an hourly employee for Whirlpool on or about May 8, 2000. (Defendant's Statement of Material Facts Not in Dispute ("Statement") at #1). Crouch's fiancée, Ruth Ann Antey, is a current Whirlpool employee; she was hired in 1969. (Statement at #8-9).

As a Whirlpool employee, Crouch was obligated to comply with the Shop Rules,

including Shop Rule #1, which provides that the falsification of personnel or any other Company records is a violation of the Shop Rules. (Statement at #4-5). Crouch understood at the time of his employment that violation of Shop Rule #1 was just cause for termination. (Statement at #7).

Whirlpool employees are eligible for paid disability leave after ninety days of employment. (Statement at #21, 23). To qualify for disability leave, an employee's doctor must certify that the employee is totally disabled and unable to work. (Statement at #22). In 2002, Crouch was approved to take four to five days per month of intermittent FMLA leave due to chronic pain in his right knee. (Statement at #24-25). Whirlpool does not dispute that Crouch had a chronic knee condition. (Whirlpool's Reply in Further Support of Its Motion for Summary Judgment ("Reply") at 6).

Whirlpool employees are permitted to sign up for vacation, by filling out vacation request forms, during two periods each year. (Statement at #10-12). Vacation requests are granted based on seniority. (Statement at #16). On two separate occasions in 2002, Crouch submitted vacation requests for the weeks of July 8 and July 15, 2002. (Statement at #29). Both of Crouch's requests were denied because of his low seniority, but Antey's requests for the same weeks off were granted. (Statement at #30-32).

Subsequent to the denials of his vacation requests, Crouch submitted an Accident and Sickness Claim Form, seeking disability leave from June 27, 2002 until July 21, 2002, spanning the dates that he had originally requested as vacation time. (Statement at #33). On Crouch's Accident and Sickness Claim Form, he stated that he had an accident

while working in his yard and twisted his knee.  (Statement at #34).  Whirlpool approved Crouch's leave from June 27, 2002 until July 21, 2002; his paid disability leave ran concurrently with FMLA.  (Statement #35-36).

In August 2002, Crouch submitted a vacation request for the week of September 23, 2002.  (Statement at #37).  Crouch's request was denied because of his low seniority, but Antey's request for the same week off was granted.  (Statement at #38-40).  Crouch took days off during the week of September 23, 2002, utilizing three days of his previously approved intermittent leave.  (Statement at #41).

In 2003, Crouch submitted a vacation request for the week of June 30, 2003, which was approved.  (Statement at #45-46).  On three separate occasions thereafter, Crouch submitted vacation requests for the week of July 7, 2003, all of which were denied on the basis of seniority.  (Statement at #47-48).  Antey requested vacation for the weeks of June 30 and July 7 and the days of July 14, 15, and 16, 2003, all of which were approved. (Statement at #49-50).  Subsequent to the denials of his vacation requests, Crouch submitted a request for a leave of absence, stating that he had injured his knee when he stepped in a hole in his yard.  (Statement at #57).  Whirlpool approved Crouch's leave from June 25, 2003 until July 15, 2003; his paid disability leave ran concurrently with FMLA.  (Statement #59-60).

Not long after Whirlpool granted Crouch his June-July 2003 leave, Deborah Latham, Crouch and Antey's supervisor, noticed the coincidences in the timing of Crouch's denied vacation requests and his subsequent requests for leave.  (Statement at

4

#61).  Latham notified Debby Castrale, manager of Salaried Human Resources and

Employee Relations, that Whirlpool had denied Crouch vacation three times for the same

period of time during which he had taken disability leave and that Antey was on vacation

during Crouch's leave.  (Statement at #62-63).

Crouch disputes the validity of the inferences that Whirlpool's management made

from the patterns in his vacation requests and subsequent medical leaves.  For example,

Whirlpool contends that "Plaintiff's disability leave raised doubts that Plaintiff requested

this leave under false pretenses," (Statement at #64), to which Crouch responds that he

"disputes that he requested a leave under false pretenses."  (Plaintiff's Brief in Opposition

to Defendant's Motion for Summary Judgment ("Opposition") at 3).  Crouch's response –

that the leave was valid – does not address whether or not the doubts that Whirlpool had

were based on reasonable inferences.

Once Castrale's attention was drawn to the coincidence of the 2003 dates, she

confirmed that Crouch had applied for leave during the same late June to early July time

period for a very similar reason in 2002.  (Statement at #69-73).  Based on the suspicion

raised regarding the validity of Crouch's sickness and accident leave, Whirlpool hired a

private detective, Dave Gainer Investigations ("DGI"), to investigate the circumstances

surrounding Crouch's leave.  (Statement at #73-74).  DGI surveilled Crouch's residence

on July 12, 2003, when he was still on leave, and videotaped him doing 48 minutes of

yard work including weed-eating, cutting grass, and kneeling down to work on a lawn

mower.  (Statement at #75).  The yard work was apparently not inconsistent with his

medical leave; Crouch's doctor, Dr. Craig Haseman, testified at his deposition that keeping Crouch "off of concrete surfaces . . . was the main concern." (Opposition at 5; Haseman Dep. at 52).[2] An employee's engagement in activities that are compliant with his or her doctor's restrictions does not violate Whirlpool's disability policies. (Opposition at 9).

Joe West, Whirlpool's Supervisor of Employee Relations, reviewed the video and decided (erroneously, for the sake of Summary Judgment) that Crouch's active yard work was inconsistent with his Sickness and Accident Leave. (Statement at #76-77). At this point Castrale concluded that Crouch had fraudulently applied for and received disability leave; she found that he had requested a medical leave because he wanted to take vacation, not because he had a serious medical condition. (Statement at #78-79). West and Keith Bergner, the lead advisor in Crouch's unit, decided to suspend Crouch, and Castrale approved the suspension. (Statement at #80-81). Crouch "disputes any inference that he requested a leave because he wanted to take a vacation, not because he

---

[2] Dr. Haseman's deposition also contains this exchange:

Q:   Okay. Did you prescribe rest for him [Crouch] as a type of a restriction or recommendation that he do during the June/July 2002 leave?

A:   No. I think the only thing that was the concern was to take him off of the concrete floor, but I don't think I directly told him to do anything specifically to improve it.

Q:   Okay, And if Mr. Crouch testified that, in June of 2002, you told him to rest his knee and then put pressure on it, do you have any reason to dispute that?

A:   No, I don't . . . .

Q:   . . . And the same thing with the June/July 2003. With respect to if Mr. Harold Crouch testified that you told him to slowly put more weight on his leg over the period of the leave, would you have any reason to dispute that?

A:   I would not.

(Haseman Dep. at 52-53).

had a serious medical condition."  (Opposition at 5).

Crouch returned to work on July 16, 2003.  (Statement at #82).  Upon his return, Crouch was suspended pending investigation into whether he had violated Shop Rule #1 by falsely applying for a leave of absence.  (Statement at #83).  A fact finding meeting between Whirlpool and Crouch was held on or about July 21, 2003.  (Statement at #84).  During the meeting, Castrale discussed Crouch's falsification of his need for leave, and he was shown the surveillance video from DGI.  (Statement at #86-87).  Crouch did not give Whirlpool any reason not to terminate him for falsification, and he admitted to vacationing in Las Vegas while he was on medical leave.  (Statement at #91-92).  The trip to Las Vegas did not technically violate Whirlpool's disability leave policies. (Opposition at 10).

As evidenced by his signature on Crouch's disability paperwork, Dr. Haseman was aware that Crouch had injured his knee in his backyard.  (Haseman Dep. Ex. 7).  Dr. Haseman completed the paperwork for Crouch's leave in order to give Crouch time to recuperate away from day-to-day walking on the hard concrete surfaces at Whirlpool.  (Opposition at 7).

Under Whirlpool's FMLA and disability leave policies, Whirlpool can ask and has asked employees to obtain second medical opinions or to provide additional information in order to verify their need for leave.  (Opposition at 8).  Whirlpool never asked Crouch to get a second opinion or to provide additional information.  (Opposition at 9).  Crouch's 2003 leave was approved before Castrale was aware that he had applied for the leave.

(Reply at 7).  Under Whirlpool's FMLA and disability leave policies, Whirlpool can

withdraw and has withdrawn the designation of an employee's leave as FMLA or

disability-qualifying.  (Opposition at 9).

From 2000 until present, all Whirlpool employees accused of violating Shop Rule

#1 have been terminated.  (Opposition at 8).  Whirlpool terminated Velda Chase for a

violation of Shop Rule #1.  (Opposition at 11).  Her termination was grieved by her

Union, International Union of Electronic, Electrical, Salaried, Machine & Furniture

Workers, Local 808.  (Reply at 9-10).  During a grievance settlement meeting with Local

808, Whirlpool and Local 808 agreed to reinstate Chase.  (Reply at 10).

## III.    Analysis

Crouch's complaint consists of two FMLA claims: (1) a substantive rights

violation based on Whirlpool's failure to reinstate him under the FMLA's return-to-work

provision (29 U.S.C. § 2614(a)); and (2) retaliation for taking protected FMLA leave (29

U.S.C. § 2615(a)).

## A.    Return-to-Work

In the Seventh Circuit, an employer's honestly held suspicion that an employee is

not using medical leave for its intended purpose is enough to defeat a substantive rights

claim under the FMLA.  *Kariotis v. Navistar Inter'l Trans. Corp.*, 131 F.3d 672, 681 (7th

Cir. 1997).  In *Kariotis*, the Circuit Court was faced with a scenario very similar to the

one at bar.  Plaintiff's employer fired her after becoming suspicious that she was taking

fraudulent FMLA leave, purportedly to recover from knee surgery.  *Id*. at 680-81.  The

8

Defendant-employer hired private investigators to videotape Plaintiff, and the resulting tapes showed Plaintiff engaged in activities such as walking, driving, sitting, and bending. *Id* at 675.  Defendant concluded that Plaintiff was not disabled or physically impaired, and Plaintiff was fired.  *Id*.  The Circuit Court upheld the District Court's dismissal of Plaintiff's FMLA claims, finding that Defendant did not need to conclusively prove that Plaintiff had misused her leave; that is, "an honest suspicion will do." *Id.* at 680. Further, the court reasoned that "because [Defendant] lawfully could have terminated [Plaintiff] after suspecting she committed fraud while on duty, the company can discharge her after suspecting she committed fraud while on leave." *Id*. at 680; *see also Mosley v. Hedges*, 1998 WL 182479, *6 (N.D. Ill. 1998) (finding for the employer when "defendants hired a private investigator to observe the plaintiff.  The investigator observed the plaintiff walking and driving.  Based on the investigator's report, [the employer] concluded that plaintiff's extension of the leave period was a 'fraudulent use of sick leave benefits'").

In the briefing on the motion before this court, Crouch fails to mention, much less distinguish, *Kariotis*.  Instead, he relies on a 1998 case from the Northern District of California, *Sims v. Alameda-Contra Costa Transit District*.  2 F.Supp.2d 1253.  The *Sims* court held that:

> where an employee's initial medical certification establishes
> that he had a serious health condition, and the employer fails
> to require the employee to obtain a second medical opinion
> (and a third if the first two conflict), the employer waives its
> right to later contest the veracity of the initial medical

> certification and argue that the employee did not have a
> serious medical condition at the time of his absence.

*Id*. at 1268.  The "second medical opinion" language comes from 29 U.S.C. § 2613(c),

which provides that an employer "may require" an employee to secure a second opinion.

Citing *Sims*, Crouch argues that the fact that Whirlpool hired a private investigator

instead of seeking a second medical opinion amounts to a violation of his rights.  Crouch

argues that "Defendant could have requested that Crouch obtain a second medical opinion

to verify his need for leave."  What Whirlpool could have done is neither here nor there;

the court is concerned with what Whirlpool was legally obligated to do.  The Seventh

Circuit has not adopted the *Sims* Court's holding that secondary medical opinions are

obligatory.  To the extent that *Sims* conflicts with *Kariotis*, *Sims* is not guiding to this

court.[3]

Crouch has introduced no evidence to undermine Whirlpool's assertion that it held

an honest suspicion that he requested medical leave under false pretenses.  The record

---

[3] The issue of whether the FMLA's language regarding second opinions is permissive or obligatory has appeared in other Circuits as well.  "The Eighth Circuit and the Fourth Circuit have disagreed with *Sims* and *Miller*, though without addressing the detailed and persuasive reasoning of *Sims*.  See *Rhoads v. FDIC*, 257 F.3d 373, 385 (4th Cir. 2001); *Stekloff v. St. John's Mercy Health System*, 218 F.3d 858, 860 (8th Cir. 2000).  Both appellate courts pointed out that the statutory term 'may' is permissive, of course.  However, that point does not address the argument in *Sims* that the permitted procedure for resolving medical disagreements quickly and with doctors (rather than with judges and juries) should be the only procedure for an employer to challenge a facially sufficient medical certification of eligibility for leave.  A different approach would, in Judge Lefkow's terms in *Smith*, render meaningless the statutory term 'sufficient' and the law's protection for employee privacy.  2003 WL 22757754, *8."  *Dowell v. Indiana Heart Physicians, Inc*., 2004 WL 3059788, *5 n.1 (S.D.Ind. 2004 (Hamilton, J.) (not reaching the permissive versus obligatory inquiry because Plaintiff's certification for leave was facially insufficient)).

before the court shows that the coincidental dates and the surveillance video led

Whirlpool to an authentic, if potentially inaccurate, inference that Crouch was not using

his FMLA leave for its intended purpose.  As such, Crouch's claim of a substantive rights

violation fails.

**B.      Retaliation**

Crouch's second claim is that Whirlpool retaliated against him for taking medical

leave when it terminated and failed to reinstate him after his July 2003 leave.  In order to

prevail on his retaliation claim, Crouch must show, either directly or indirectly, that

Whirlpool's actions were based upon prohibited discrimination.  *See, e.g.*, *Buie v.*

*Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).  In this case, Crouch attempts the

indirect method of establishing his claim.  (*See* Opposition at 18).

The parties agree that this indirect method involves the burden-shifting analysis

articulated in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802-03 (1973); *see also*

*Kariotis*, 131 F.3d at 676 (applying *McDonnell Douglas* to an FMLA claim).  As such,

the burden is on Crouch to establish his prima facie case; if he does so, the burden shifts

to Whirlpool to articulate a nondiscriminatory reason for its actions.  *Id*.  In order to

establish his prima facie case, Crouch must show that (1) he engaged in a statutorily

protected activity; (2) he was subjected to an adverse employment action; (3) he was

performing his job in a satisfactory manner; and (4) he was treated less favorably than

any other similarly situated employee who did not engage in such protected activity.  *See*

*Buie*, 366 F.3d at 503; *see also McDonnell Douglas*, 411 U.S. at 802-03.

11

In its Motion for Summary Judgment, Whirlpool argues that Crouch cannot establish the fourth element of his prima facie case because he cannot show that any other employee who violated Shop Rule #1 was treated more favorably than he was.  Crouch contends that he can establish this element because Velda Chase was treated more favorably than he was.  Chase was accused of violating Shop Rule #1 for falsification of company records, and she was terminated.  *See* Crouch Affidavit at ¶ 2, Ex. A (Documents No. W01648-01651, W01794, W01805-W01806).  Her termination was grieved by her Union, Local 808, and during a grievance settlement meeting Whirlpool and Local 808 agreed to reinstate Chase.  (Reply at 10).

Assuming, arguendo, that Crouch and chase were similarly situated prior to their respective violations of Shop Rule #1, the court finds that Chase was not treated more favorably than Crouch.  Whirlpool consistently treated violation of Shop Rule #1 as grounds for termination and both Chase and Crouch were terminated on those grounds.  The fact that Chase was offered reinstatement stems from the fact that Local 808 chose to pursue her grievance.  Local 808 chose not to pursue Crouch's grievance.  (Amended Complaint ¶ 28).  Local 808's decision not to pursue the matter cannot be interpreted as discrimination on the part of Whirlpool.  Because Crouch cannot establish the fourth element of his prima facie case, his retaliation claim fails.

**IV.    Conclusion**

Crouch has introduced no evidence to counter the fact that Whirlpool had an honest belief that he was not using his FMLA leave for its intended purpose.

Furthermore, Crouch has not established that any other similarly situated Whirlpool employee was treated more favorably than he was by Whirlpool.  For the foregoing reasons and based on the record as a whole, Whirlpool's Motion for Summary Judgment is granted.

It is **so ordered** this 20th day of June 2005.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Kenneth E. Lauter
HASKIN LAUTER LARUE & GIBBONS
klauter@hlllaw.com

Garrison L. Phillips
LITTLER MENDELSON, P.C.
gphillips@littler.com

Marissa Ross
LITTLER MENDELSON, P.C.
maross@littler.com

Bradley L. Wilson
HASKIN LAUTER LARUE & GIBBONS
bwilson@hlllaw.com